United States District Court
Southern District of Texas
**ENTERED**
September 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAY NOLAN RENOBATO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-17-3904 |
| | § | |
| BUREAU OF THE FISCAL SERVICE, | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is the Defendant's Motion to Dismiss. (Docket Entry No. 21.) This motion was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket Entry No. 31.) Having considered the motion, filings, and applicable law, the court recommends that this case be dismissed for lack of subject-matter jurisdiction.

Jay Nolan Renobato filed suit against the Bureau of the Fiscal Service on December 28, 2017. The Bureau of the Fiscal Service, among other functions, borrows the money needed to operate the federal government through the sale of Treasury bills, bonds, and notes, and accounts for the resulting debt, provides government-wide accounting and reporting services, and manages the collection of delinquent debt owed to the government. The Bureau also operates Treasury Direct, a financial services website that facilitates buying and redeeming Treasury securities directly from the U.S. Department of the Treasury in paperless electronic form.

1

Renobato's thirty-four-page complaint includes claims against the United States for violations of various provisions of federal law, including

- the Fourth and Fourteenth Amendments to the United States Constitution,
- 7 U.S.C. §§ 4, 5, 6a, 6b, 6c, 9, 13b, 25 (relating to commodities exchanges),
- 12 U.S.C. §§ 221, 283 (relating to the Federal Reserve system),
- 15 U.S.C. §§ 1, 2, 13, 78i, 78j, 78q-1 (concerning monopolies and combinations in restraint of trade),
- 18 U.S.C. §§ 31, 1001 (concerning fraudulent statements),
- 12 C.F.R. §§ 220.2, 220.6 (concerning credit by brokers and dealers),
- 17 C.F.R. §§ 240.10b-10, 240.15c3-1, 402, 240.11Ac1-3 (concerning manipulative and deceptive securities trade practices), and
- 31 C.F.R. §§ 306, 306.1, 306.15, 309.1, 309.2, 309.3, 357.0, 357.22, 357.28, 357.29, 3104, 3121, 3333, 3572.20 (regulating U.S. securities).

It appears that Renobato's main complaint is that the Bureau refuses to exchange each of his twenty-three Treasury bills, each of which he purchased for one thousand dollars, for Treasury bills valued at one million dollars each. Renobato states as follows in his complaint:

> Briefly over the past two (2) years Plaintiff, whose repurchase instructions on Form 3905 were failed to be followed by Defendant causing economic injury, bought and sold twenty-three (23) 90-day Treasury bills [Series 912796] in cash forward trades generating millions of dollars in gross revenue on paper for the arbitrage business of such beneficial owner, and simultaneously producing millions of dollars in mint seignorage [sic] to the benefit of the Department of the Treasury and/or any number of its subsidiary entities. . . .

(Docket Entry No. 1 at 5–6.) Renobato appears to believe that he is entitled to a 1,000 percent return on his investment based on his submission of a Form 3905, which appears only to be a form permitting the exchange of government securities in different denominations. Renobato alleges that

> upon receipt of Form 3905, since BFS had ample time to process and handle the transaction requests electronically in a situation where the customer sells a security through or to a securities intermediary, BFS did then and there break its promises to make denominational exchanges of Plaintiff's T-bills . . . .

(Docket Entry No. 1 at 11–12.)

Under the Little Tucker Act and the Tucker Act, this court has jurisdiction over claims "against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). This court does not have jurisdiction over any such claim exceeding $10,000; rather, the Court of Federal Claims has exclusive jurisdiction over those claims. 28 U.S.C. § 1491(a)(1).

Renobato's claim is covered under the Tucker Act even as he has framed it, because it is based on the Constitution, various Acts of Congress, regulations, and express or implied contracts with the United States. He has alleged essentially a contract claim, however. "The particular characterization or title that the plaintiff gives to the claim at issue is not controlling." *Contango Operators, Inc. v. United States*, No. CV H-11-0532, 2011 WL 13130834, at *2 (S.D. Tex. Oct. 26, 2011) (Lake, J.). In determining whether a claim is contractual, a court should consider

3

"the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Id.* (citing *United States v. J & E Salvage Co.*, 55 F.3d 985, 989 (4th Cir. 1995)); *see also Trader Properties, LLC v. United States*, No. CIV.A. G-14-254, 2015 WL 1208983, at *2 (S.D. Tex. Mar. 16, 2015) (citing *J & E Salvage Co.*, 55 F.3d at 989, and noting that the relevant inquiry is whether the plaintiff has alleged "at heart a contract case.").

The only relief Renobato seeks is based on the United States' alleged failure to fulfill its obligations to him under various statutes and regulations governing the issuance and exchange of Treasury bills. (Docket Entry No. 1 at 11–30.) Government bonds and Treasury bills are generally viewed as contracts between the government and the owners. *See Zelman v. Gregg*, 16 F.3d 445, 446 (1st Cir. 1994) (construing claims based on Treasury bonds as breach of contract claims). Renobato seeks "principally . . . money damages," which is further characteristic of a contract claim. (Docket Entry No. 1 at 5.) But for the government's alleged failure to fulfill its promises under the Treasury Bills he purchased, he has no claim at all.

The Little Tucker Act's jurisdictional amount-in-controversy ceiling of $10,000 is exceeded in this case. Renobato alleges "[a]ctual money damages" of "$22,977,000 in total or $999,000 per transaction." (Docket Entry No. 1 at 31.) He also alleges punitive damages and "Opportunity Cost" damages, totaling alleged gross damages of one billion dollars. (Docket Entry No. 1 at 32.) He does not contest that his claim is for more than $10,000, and in fact affirmatively alleges

4

that his claim is for more than $75,000 for jurisdictional purposes. (Docket Entry No. 26 at 7.)

Given the novel nature of Renobato's claims, the court also considers that the total purchase value of Renobato's bonds, $23,000, independently exceeds the Little Tucker Act's jurisdictional ceiling. *See Zelman*, 16 F.3d at 447 (affirming the district court's dismissal of a suit in which the plaintiff did not argue that the claims may be disaggregated). Renobato's breach of contract claim, though involving twenty-three T-Bills, is based principally on the Bureau's alleged breach with respect to Renobato's transaction request, the "Form 3905." Renobato alleges that he submitted to the Bureau a "Form 3905" listing those "registered securities" he deemed "eligible for denominational exchange . . . before the due date on which the securities mature." (Docket Entry No. 1 at 11–12) (alleging that the Bureau, "upon receipt of Form 3905 . . . did then and there" breach its obligations). "[R]ecovery on each bond" listed on Renobato's transaction request "would rise and fall on the same facts and legal arguments." *See Glaskin v. Klass*, 996 F.Supp. 67 (D. Mass. 1998) (finding "that the bonds included in each application form the basis for a single cognizable claim").

The Court of Federal Claims has exclusive jurisdiction over contract claims against the United States for more than $10,000. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). No request has been made to transfer this case to the Court of Federal Claims. *See Zelman*, 16 F.3d at 446 (affirming district court's decision to dismiss suit for lack of jurisdiction rather than transfer to the claims court, noting that no party had requested transfer). Moreover, transfer is only appropriate if in the

interest of justice. 28 U.S.C. § 1631. Considering the nature of Renobato's claims in this case and other courts' orders concerning his prior similar claims, the court finds it is not in the interest of justice to transfer this case. *See, e.g., Renobato v. Merrill Lynch & Co.*, 153 F. App'x 925, 929 (5th Cir. 2005) (ordering clerk of court not to accept further filings). This is not the first lawsuit Renobato has filed alleging similar causes of action. *See Renobato v. Bureau of Pub. Debt*, CV H-00-425 (S.D. Tex. May 23, 2000) (dismissing Renobato's claims alleging "various torts as well as breach of contract . . . related to the purchase of Treasury bills"), *aff'd* 250 F.3d 739 (5th Cir. 2001) ("Even on the merits, Renobato's appeal is without arguable merit and is frivolous.").

Accordingly, the court finds that it does not have subject-matter jurisdiction over Renobato's claims and that Renobato's complaint should be dismissed.

## Conclusion

The court recommends Renobato's complaint be dismissed. The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas on September 19, 2018.

Peter Bray
United States Magistrate Judge